136 Nev., Advance Opinion 79

## IN THE SUPREME COURT OF THE STATE OF NEVADA

MICHAEL PATRICK LATHIGEE,
Appellant,
vs.
BRITISH COLUMBIA SECURITIES
COMMISSION,
Respondent.

No. 78833

**FILED**

DEC 10 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a final district court order recognizing and enforcing a Canadian judgment. Eighth Judicial District Court, Clark County; Adriana Escobar, Judge.

*Affirmed.*

Adkisson PLLC and Jay D. Adkisson, Las Vegas; Claggett & Sykes Law Firm and Micah S. Echols, Las Vegas,
for Appellant.

Naylor & Braster and John M. Naylor and Jennifer L. Braster, Las Vegas; Alverson Taylor & Sanders and Kurt R. Bonds and Matthew Pruitt, Las Vegas,
for Respondent.

BEFORE THE COURT EN BANC.

### OPINION

By the Court, PICKERING, C.J.:

This is an appeal from a district court decision to recognize and enforce in Nevada the disgorgement portion of a securities-fraud judgment from British Columbia. Appellant Michael Lathigee objects that the

20-44882

disgorgement judgment is in the nature of a fine or penalty, so it should not be enforced outside Canada. We disagree and affirm.

I.

Respondent British Columbia Securities Commission (BCSC) initiated proceedings against Lathigee under the British Columbia Securities Act (BC Securities Act). After a six-day hearing, in which Lathigee participated with counsel, the BCSC found that Lathigee had perpetrated a fraud, violating section 57(b) of the BC Securities Act, when he raised $21.7 million (CAD) from 698 Canadian investors without disclosing the failed financial condition of the entities he and his associate controlled. As sanctions, the BCSC imposed a disgorgement order on Lathigee under section 161(1)(g) of the BC Securities Act. The disgorgement order directs Lathigee to pay the ill-gotten $21.7 million (CAD) to the BCSC. Section 15.1 of the BC Securities Act and its associated regulations provide a notice-and-claim procedure by which the BCSC notifies the public and attempts to return any disgorged funds it recovers to the defrauded investors. The BCSC also imposed a $15 million (CAD) administrative penalty on Lathigee.

The BCSC registered its decision with the British Columbia Supreme Court—roughly, the equivalent of a Nevada district court. Upon registry, the decision became an enforceable judgment by operation of section 163(2) of the BC Securities Act. Lathigee sought and obtained leave to appeal to British Columbia's highest court, its Court of Appeal, which rejected Lathigee's appeal on the merits. *Poonian v. BCSC*, 2017 BCCA 207 (CanLII). With this, the judgment became final and enforceable under British Columbia law.

Lathigee left Canada and relocated to Nevada without paying the judgment. The BCSC then filed the two-count complaint underlying this appeal in Nevada district court. In its complaint, the BCSC asked the district court to recognize and enforce the $21.7 million (CAD) disgorgement portion of its judgment against Lathigee: (1) under NRS 17.750(1), which directs recognition and enforcement of foreign-country money judgments except, as relevant here, "to the extent that the judgment is . . . [a] fine or other penalty," NRS 17.740(1), (2)(b); and/or (2) as a matter of comity. The complaint did not seek to enforce the $15 million (CAD) administrative penalty the judgment imposed. Despite this, Lathigee objected that the disgorgement portion of the BCSC judgment also constitutes a fine or penalty, so neither NRS 17.750(1) nor comity supports its recognition and enforcement in Nevada.

The case came before the district court on cross-motions for summary judgment. Ruling for the BCSC, the district court recognized the disgorgement judgment as enforceable under NRS 17.750(1). It held that the judgment did not constitute a penalty but, rather, an award designed to afford eventual restitution to the defrauded investors under the notice-and-claim mechanism provided by section 15.1 of the BC Securities Act. In addition, citing the close ties between Canada and the United States and the fact that Canadian courts have recognized and enforced United States Securities Exchange Commission (SEC) disgorgement judgments, the district court recognized the judgment based on comity. Lathigee timely appealed.

II.

Nevada has adopted the Uniform Foreign-Country Money Judgments Recognition Act (2005), 13 pt. II U.L.A. 18-43 (Supp. 2020) (Uniform Act), in NRS 17.700 through NRS 17.820. The Act applies to

SUPREME COURT
OF
NEVADA

(O) 1947A

foreign-country judgments that grant or deny monetary recovery and are "final, conclusive, and enforceable" under the law of the jurisdiction where rendered. NRS 17.740(1). A Nevada court "*shall* recognize a foreign-country judgment to which NRS 17.700 to 17.820, inclusive, apply," NRS 17.750(1) (emphasis added), unless one of the grounds for non-recognition stated in NRS 17.750(2) or (3) is proved or one of the categorical exceptions stated in NRS 17.740(2)(a), (b), or (c) applies.[1]

By its terms, the Act does not apply "to the extent that the judgment is . . . [a] fine or other penalty." NRS 17.740(2)(b). But the Act contains a "savings clause," *see* NRS 17.820, under which "courts remain free to consider" whether a judgment that falls outside the Act "should be recognized and enforced under comity or other principles." Uniform Act § 3, cmt. 4, *supra*, 13 pt. II U.L.A. at 26. Essentially, the Act sets base-line standards, not outer limits. It "delineates a minimum of foreign-country judgments that must be recognized by the courts of adopting states, leaving those courts free to recognize other foreign-country judgments not covered by the Act under principles of comity or otherwise." Uniform Act prefatory note, 13 pt. II U.L.A. at 19.

Statutory interpretation presents a question of law to which de novo review applies. *See Friedman v. Eighth Judicial Dist. Court*, 127 Nev. 842, 847, 264 P.3d 1161, 1165 (2011). "In applying and construing the Uniform Foreign-Country Money Judgments Recognition Act, consideration

---

[1]"A party resisting recognition of a foreign-country judgment has the burden of establishing that a ground for nonrecognition stated in [NRS 17.750] subsection 2 or 3 exists." NRS 17.750(4). Conversely, "A party seeking recognition of a foreign-country judgment has the burden of establishing that NRS 17.700 to 17.820, inclusive, apply to the foreign-country judgment." NRS 17.740(3).

must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it." NRS 17.810. To this end, we accept as persuasive authority the official comments to the Uniform Act and the decisions of courts elsewhere interpreting it. *See Friedman*, 127 Nev. at 847, 264 P.3d at 1165.

## A.

Lathigee admits that the disgorgement judgment grants monetary recovery; that it is final, conclusive, and enforceable under British Columbia law; and that neither the grounds for non-recognition specified in NRS 17.750(2) and (3) nor the categorical exceptions stated in NRS 17.740(2)(a) and (c) apply. NRS 17.750(1) thus mandates recognition of the BCSC's disgorgement judgment except "to the extent" that it is a "fine or other penalty." NRS 17.740(2)(b). That is, in this case, the $21.7 million (CAD) question.

The Uniform Act does not define what constitutes a judgment for a "fine" or "penalty." Its fine-or-penalty exception codifies the common law rule against one sovereign enforcing the criminal laws and penal judgments of another. *Chase Manhattan Bank, N.A. v. Hoffman*, 665 F. Supp. 73, 75 (D. Mass. 1987) (cited in Uniform Act § 3, cmt. 4, 13 pt. II U.L.A. at 26); *see The Antelope*, 23 U.S. 66, 123 (1825) ("The Courts of no country execute the penal laws of another . . . ."). The Supreme Court's decision in *Huntington v. Attrill*, 146 U.S. 657 (1892), stands as the seminal authority on the common law rule against enforcing foreign penal judgments. *Chase Manhattan Bank*, 665 F. Supp. at 75; *see City of Oakland v. Desert Outdoor Advert., Inc.*, 127 Nev. 533, 538, 267 P.3d 48, 51 (2011). As *Huntington* recognizes, 146 U.S. at 666, the word "penal" has "different shades of meaning," depending on context. "The question whether a statute of one state, which in some aspects may be called penal, is a penal law, in

the international sense, so that it cannot be enforced in the courts of another state, depends upon . . . whether its purpose is to punish an offense against the public justice of the state, or to afford a private remedy to a person injured by the wrongful act." *Id.* at 673-74.

Consistent with *Huntington,* "the test for whether a judgment is a fine or penalty"—and so outside the Uniform Act's (and NRS 17.750(1)'s) recognition mandate—"is determined by whether its purpose is remedial in nature with its benefits accruing to private individuals, or it is penal in nature, punishing an offense against public justice." Uniform Act § 3, cmt. 4, 13 pt. II U.L.A. at 26. The test is more nuanced than its binary phrasing suggests. A single judgment can include both an unenforceable penalty and an enforceable remedial award. *See* Restatement (Fourth) of the Foreign Relations Law of the United States § 489 cmt. d (Am. Law Inst. 2018). And a money judgment, particularly one that runs in favor of a governmental entity, can serve both remedial and public or penal purposes. Under the Uniform Act, "a judgment that awards compensation or restitution for the benefit of private individuals should not automatically be considered penal in nature and therefore outside the scope of the Act simply because the action is on behalf of the private individuals by a government entity." *Id.* § 3, cmt. 4, 13 pt. II U.L.A. at 26. On the contrary, when a foreign "government agency obtains a civil monetary judgment for purpose[s] of providing restitution to consumers, investors, or customers who suffered economic harm due to fraud, [the] judgment generally should not be denied recognition and enforcement on [the] ground[s] that it is penal . . . in nature, or based on . . . foreign public law." *Id.*; *see* Restatement (Third) of the Foreign Relations Law of the United States § 483 cmt. b (Am. Law Inst. 1987) (defining an unenforceable foreign "penal judgment" as "a judgment in favor of a foreign state or one of its

SUPREME COURT
OF
NEVADA

(O) 1947A

6

subdivisions" that is *"primarily* punitive rather than compensatory in character") (emphasis added).

Applying these principles to the disgorgement portion of the BCSC judgment, we reject the contention that it constitutes an unenforceable penalty. The BCSC recovered its disgorgement award under section 161(1)(g) of the BC Securities Act. This statute authorizes the BCSC to recover "any amount obtained[,] directly or indirectly, as a result of" the Securities Act violation. Standing alone, section 161(1)(g)'s purpose is "neither punitive nor compensatory." *Poonian*, 2017 BCCA 207, at 23, ¶ 70. But, unlike the $15 million (CAD) penalty portion of the judgment, which was calculated according to the $1 million (CAD) per violation schedule set by section 162 of the BC Securities Act, the $21.7 million (CAD) disgorgement award represents the exact amount of money Lathigee and his associate obtained from the 698 investors they defrauded. Such disgorgement serves "to eliminate profit from wrongdoing while avoiding, so far as possible, the imposition of a penalty." Restatement (Third) of Restitution and Unjust Enrichment § 51(4) (Am. Law Inst. 2011) (noting that "Restitution remedies that pursue this object are often called 'disgorgement' or 'accounting'"); *see id.* cmt. e ("The object of the disgorgement remedy—to eliminate the possibility of profit from conscious wrongdoing—is one of the cornerstones of the law of restitution and unjust enrichment.").[2] The fact that section 161(1)(g) calculates the disgorgement

---

[2]We recognize that the BCSC disgorgement judgment imposes joint and several liability on Lathigee and his associate and the entities they controlled. It did so based on findings that established that Lathigee and his associate and their corporate entities were "effectively one person." *Poonian*, 2017 BCCA 207, at 42-43, 49-51, ¶¶ 133, 154-162. The equally culpable, concerted wrongdoing in which the BCSC found Lathigee and his

award by the amount of money the wrongdoer "obtained," not by reference to a schedule of fines or penalties, weighs in favor of treating the BCSC's disgorgement award as remedial, not punitive.

The judgment subjects any recovery the BCSC makes on its section 161(1)(g) disgorgement award to section 15.1 of the BC Securities Act. Section 15.1 and its related regulations provide a notice-and-claim procedure for the BCSC to return any money it collects on the disgorgement award to the investors the Securities Act violation harmed. The award does not represent a fine or penalty that, once collected, the BCSC can keep without obligation to the victims of the fraud. *Cf. City of Oakland*, 127 Nev. at 542, 267 P.3d at 54 (deeming a fine imposed and kept by the City of Oakland for violating its zoning ordinances penal and not compensatory). This, too, weighs in favor of treating the disgorgement award as more remedial than punitive.

Disgorgement in securities enforcement actions can take various forms, not all of them restitutionary. *See* Jennifer L. Schulp, *Liu v. SEC: Limited Disgorgement, But by How Much?*, 2019-2020 Cato Sup. Ct. Rev. 203, 207-10 (2020). But the disgorgement award in this case deprives Lathigee and his associate of the money they obtained from the investors they defrauded. *See Poonian*, 2017 BCCA 207, at 20, 23, ¶¶ 61, 70. And, under section 15.1 and its related regulations, any recovery is designed to "provid[e] restitution to . . . investors . . . who suffered economic harm due to fraud," not to enrich the BCSC. Uniform Act § 3, cmt. 4, 13 pt. II U.L.A. at 26. We therefore conclude that, for purposes of NRS 17.750(1), the

associate engaged supports the imposition of collective liability without transmuting the award from restitutionary to punitive. *See Liu v. SEC*, 591 U.S. ___, ___, 140 S. Ct. 1936, 1949 (2020).

primary purpose of the disgorgement award "is remedial in nature with its benefits accruing to private individuals," not penal, "punishing an offense against public justice." Uniform Act § 3, cmt. 4, 13 pt. II U.L.A. at 26. *See* Restatement (Fourth) of the Foreign Relations Law of the United States § 489 note 4 ("Although courts in the United States applying these rules frequently look to foreign practice, . . . the character of a foreign judgment as [penal] is a question of U.S. law.").

Lathigee acknowledges the statutes and authorities just cited but insists that *Kokesh v. SEC*, 581 U.S. \_\_\_, 137 S. Ct. 1635 (2017), compels a different conclusion. We cannot agree. *Kokesh* did not concern recognition of a foreign-country disgorgement judgment. "The sole question" in *Kokesh* was "whether disgorgement, as applied in SEC enforcement actions, is subject to [the five-year] limitations period," *id.* at \_\_\_ n.3, 137 S. Ct. at 1642 n.3, that 28 U.S.C. § 2462 establishes for an "action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture."

In *Kokesh*, both the district court and the Tenth Circuit Court of Appeals held that § 2462 did not apply to SEC disgorgement claims, which left them with "no limitations period" at all. *Kokesh*, 581 U.S. at \_\_\_, 137 S. Ct. at 1641. The Supreme Court reversed. It held that "[d]isgorgement, as it is applied in SEC enforcement proceedings, operates as a penalty under § 2462." *Id.* at \_\_\_, 137 S. Ct. at 1645. En route to this holding, the Court acknowledged that "disgorgement serves compensatory goals in some cases." *Id.* at \_\_\_, 137 S. Ct. at 1645. But SEC disgorgement actions are not limited to recovery of funds the wrongdoer obtained. *Id.* at \_\_\_, 137 S. Ct. at 1644-45 (noting that "[i]ndividuals who illegally provide confidential trading information have been forced to disgorge profits gained by individuals who received and traded based on that information—even though they never received any profits"). And, unlike a BCSC disgorgement

Supreme Court
of
Nevada

(O) 1947A

9

judgment, where any funds recovered are subject to the notice-and-claim procedure BC Securities Act section 15.1 provides victimized investors, no "statutory command" charges the SEC with remitting the disgorged funds it recovers to victims. *Id.* at ___, 137 S. Ct. at 1644.

In *Liu v. SEC*, 591 U.S. ___, 140 S. Ct. 1936 (2020), the Supreme Court returned to *Kokesh*. It confirmed that the sole question *Kokesh* decided was whether 28 U.S.C. § 2462's limitations period applies to SEC disgorgement claims. *Liu*, 591 U.S. at ___, 140 S. Ct. at 1941. What *Kokesh* did not decide was "whether a § 2462 penalty can nevertheless qualify as 'equitable relief' under [15 U.S.C.] § 78u(d)(5), given that equity never 'lends its aid to enforce a forfeiture or penalty.'" *Id.* at ___, 140 S. Ct. at 1941 (quoting *Marshall v. Vicksburg*, 82 U.S. 146, 149 (1873)); *see id.* at ___, 140 S. Ct. at 1946 (brushing aside the claim that the Court "effectively decided in *Kokesh* that disgorgement is necessarily a penalty, and thus not the kind of relief available at equity" with a blunt, "Not so."). Citing the Restatement (Third) of Restitution and Unjust Enrichment § 51, *Liu* recognizes that to the extent a disgorgement award redresses unjust enrichment and achieves restitution, it is situated "squarely within the heartland of equity," 591 U.S. at ___, 140 S. Ct. at 1943, and does not constitute an impermissible penalty. *See id.* at ___, 140 S. Ct. at 1944. Unlike *Kokesh*, which adopted a bright-line rule appropriate to its statute-of-limitations context, *Liu* counsels a case-by-case assessment of whether a disgorgement claim seeks restitution, consistent with equitable principles, or a penalty, which equity does not allow. *See id.* at ___, 140 S. Ct. at 1947-50.

## B.

Alternatively, even crediting Lathigee's argument that NRS 17.740(2)(b) takes the disgorgement judgment outside NRS 17.750(1)'s mandatory recognition provisions, the district court properly recognized it

SUPREME COURT
OF
NEVADA

(O) 1947A

10

as a matter of comity. The comity doctrine is "a principle of courtesy by which 'the courts of one jurisdiction may give effect to the laws and judicial decisions of another jurisdiction out of deference and respect.'" *Gonzales-Alpizar v. Griffith*, 130 Nev. 10, 18, 317 P.3d 820, 826 (2014) (quoting *Mianecki v. Second Judicial Dist. Court*, 99 Nev. 93, 98, 658 P.2d 422, 424-25 (1983)); *see Hilton v. Guyot*, 159 U.S. 113, 165 (1895) (stating that comity "contributes so largely to promote justice between individuals, and to produce a friendly intercourse between the sovereignties to which they belong, that courts of justice have continually acted upon it as a part of the voluntary law of nations") (internal quotation marks omitted). Under comity, Nevada courts will not "recognize a judgment or order of a sister state if there is 'a showing of fraud, lack of due process, or lack of jurisdiction in the rendering state.'" *Gonzales-Alpizar*, 130 Nev. at 19-20, 317 P.3d at 826 (quoting *Rosenstein v. Steele*, 103 Nev. 571, 573, 747 P.2d 230, 231 (1987), and adopting the limits on comity stated in the Restatement (Third) of the Foreign Relations Law of the United States § 482 (Am. Law Inst. 1987)). But otherwise, comity may be "appropriately invoked according to the sound discretion of the court acting without obligation." *Mianecki*, 99 Nev. at 98, 658 P.2d at 425; *see In re Stephanie M.*, 867 P.2d 706, 716 (Cal. 1994) (reviewing grant of comity for abuse of discretion).

Lathigee does not raise any of the defenses to comity recognized in *Gonzales-Alpizar* or the Restatement (Third) of Foreign Relations Law § 482. Instead, citing the Restatement (Third) of Foreign Relations Law § 483, he argues that Nevada need not and, under *Kokesh*, should not grant comity to a foreign-country disgorgement judgment, because such a judgment constitutes a penalty. But neither the Restatement (Third) § 483 nor its comments speak to comity; section 483 simply restates the rule that "[c]ourts in the United States are not required to recognize or enforce

SUPREME COURT
OF
NEVADA

(O) 1947A

11

judgments for the collection of [fines] or penalties" that NRS 17.740(2)(b) already provides. And, as discussed, *supra*, § II.A, *Kokesh* does not establish the profound policy against recognizing and enforcing foreign-country disgorgement judgments that Lathigee says it does.

The policy of promoting cooperation among nations has special strength as between Canada and the United States. The United States shares a long border with Canada. As the district court found, the SEC and the securities commissions of each of the provinces, including the BCSC, often work together, since the proximity and relations of the two countries make it easy for fraud to move between them. In fact, the United States and Canada have signed a Memorandum of Understanding, which provides that the "Authorities will provide the fullest mutual assistance" "to facilitate the performance of securities market oversight functions and the conduct of investigations, litigation or prosecution." And Canadian courts have upheld SEC disgorgement judgments repeatedly. *United States (SEC) v. Cosby*, 2000 BCSC 338, at 3, 15, ¶¶ 4, 26 (CanLII) (enforcing the disgorgement portion of an SEC judgment against an individual who engaged in fraudulent schemes to raise capital for a Nevada corporation and rejecting the argument that the U.S. disgorgement judgment was "unenforceable" in British Columbia "because it is a foreign penal judgment"); *id.* at 3, 14, ¶¶ 5, 24 (discussing the Canadian decision in *Huntington v. Attrill*, [1893] A.C. 150 (P.C.)); *see United States (SEC) v. Peever*, 2013 BCSC 1090, at 6, ¶ 18 (CanLII) (to similar effect; citing *Cosby*); *United States (SEC) v. Shull*, [1999] B.C.J. No. 1823 (S.C.) (same).

"[I]nternational law is founded upon mutuality and reciprocity . . . ." *Hilton*, 159 U.S. at 228. Recognizing these principles,

Supreme Court
of
Nevada

(O) 1947A

12

"Canadian judgments have long been viewed as cognizable in courts of the United States." *Alberta Sec. Comm'n v. Ryckman*, 30 P.3d 121, 126 (Ariz. Ct. App. 2001). The district court properly recognized the BCSC disgorgement judgment under principles of comity.

We therefore affirm.

_____, C.J.
Pickering

We concur:

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver